# CHARLESTON.

John Striza v. First National Bank of Princeton

Submitted September 30, 1924.   Decided October 14, 1924.

1.  Sales—*Purchaser May Rescind for Vendor's Failure to Deliver Good Title and Recover Earnest Money.*

    If at the time and place stipulated for the consummation of a contract of sale and purchase of personal property the seller has not the right and title thereto and to every part thereof and is then unable to make and pass good title, the purchaser for such breach may elect to rescind the contract, and recover any payment or payments made thereon or money deposited as an earnest of his good faith.  (p. 367).

2.  Same—*Vendee Not Bound to Accept Less Than Good Title Nor Submit to Terms Other Than Those of Contract at Execution.*

    In such a case as is assumed in the first point, the purchaser is not bound to accept less than a good title, or to submit to terms and conditions proposed by the seller not agreed upon at the time of the contract.  (p. 367).

Appeal from Circuit Court, Mercer County.

Suit by John Striza against the First National Bank of Princeton and others.  From a decree for defendants, plaintiff appeals.

*Reversed, and rendered.*

*Cecil H. Riley,* for appellant.
*John M. McGrath,* for appellees.

Miller, Judge:

By his bill plaintiff sought recovery from defendants, or the one of them having possession thereof, of the sum of $500.00 paid by him, or deposited in the defendant bank, as the initial payment, or as a forfeit in the event of his failure, within a stipulated time, to appear and pay the balance of purchase money for a lot of restaurant fixtures, groceries and supplies then situated in a hotel building in the city of

Princeton, for which he made a contract with one Tom Charoukas, on the 26th day of August, 1922, at the price of $2,000.00, and that he might also be released from said forfeiture.

As a basis for the relief prayed for, it is alleged, that after his agreement with said Charoukas for the sale and purchase of said property, plaintiff was told by him that he had a good lawyer, and requested that he go with him, and that he was taken to the office of the defendant C. R. McNutt, who prepared a contract which plaintiff would not sign, because he had not dealt with McNutt, and did not know that McNutt had any interest in the property. Plaintiff further alleges that at the time he had a certificate of deposit from a bank in Pocahontas, Virginia, for more than $2,000.00; that he and the other parties to the transaction went to the banking house of the First National Bank of Princeton, where he turned over said certificate of deposit to an officer or employee of the bank, the larger part of which was placed to plaintiff's credit, but that he understood that $500.00 thereof was to be turned over to said Charoukas as the initial payment on the purchase price of said property, upon the terms that plaintiff was to take possession thereof on August 31, 1922, at which time he was to pay the residue of the purchase money, namely, $1,500.00.

Plaintiff further alleges that after making said contract he proceeded at considerable expense to make improvements on the restaurant, and that he purchased an additional supply of groceries therefor, and was preparing for and fully intended to carry out the contract in good faith, when, on August 30, 1922, he was informed by said Charoukas that he could not have the groceries which were in the restaurant at the time of the contract; that since said purchase plaintiff was informed and charges that one Crotty, a constable, had levied an execution on said groceries, and some time later had sold them to satisfy a judgment against said Charoukas; that the groceries so purchased by him from Charoukas were considerable in value and were one of the considerations for entering into the contract; and that when informed he was not to get said groceries, he refused to accept the other property and demanded the return of his money, the $500.00.

Plaintiff further alleges that he is informed and charges the fact to be that said bank did not turn over said $500.00 to Charoukas, as he understood and intended it should be, but that the same is now in the hands of one or the other of the three defendants. Plaintiff alleges that he is an Austrian, speaks and understands the English language with difficulty, and that he can neither read nor write, and has had little, if any, business experience; that at the time of the contract with Charoukas, a paper was handed him signed by R. N. Vermillion, assistant cashier of said bank, which he has since learned was a receipt for the $500.00; that though his agreement was with Charoukas, and the sum paid as aforesaid, as well as the balance of the purchase money, was to be paid to him, he is now informed the said defendant McNutt claims that the sale of said property was made by him to plaintiff, and that said sum of $500.00 has been forfeited to him, but he alleges that he did not knowingly enter into any contract with the said McNutt. . .

Plaintiff further alleges that the contract to pay down said sum of $500.00 was, and the payment thereof as agreed, intended as a contract of forfeiture, and not for liquidated damages in case he did not return at the time stipulated and pay the balance of the purchase money.

The defendant bank and Vermillion, the assistant cashier, answered jointly. McNutt filed a separate answer to the bill. In their joint answer respondents allege, substantially as it is alleged in McNutt's answer, than when McNutt and plaintiff came into the bank, McNutt explained in his presence and hearing that plaintiff had contracted with him to buy the property; that plaintiff was to deposit there in the bank $500.00 as a payment on the property and to guarantee that he would return and complete the payment on the terms stipulated, and enter into a written contract in regard to the same; that a written receipt for the deposit of the $500.00 was prepared and signed, showing the amount and the terms and conditions on which it was made, signed by Vermillion for the bank and delivered to plaintiff; and that being informed by McNutt that plaintiff had failed to complete the purchase as required, said sum of $500.00 had been paid to McNutt. In McNutt's answer he admits that in August

1922 plaintiff and Charoukas came to his office and informed him that "they had about concluded a deal or a sale by Charoukas to plaintiff" of the property. Thereupon he says he explained to plaintiff in the presence of Charoukas that said property was not the property of Charoukas; that it had been sold by Charoukas to Harrison Ward, a part of the purchase money paid, and notes aggregating $3,000.00 secured by a deed of trust on the property had been assigned by Charoukas to him, and that neither he nor Charoukas could then pass good title to the property to plaintiff; that he then explained to plaintiff that under the terms of the deed of trust from Ward to Charoukas, the whole of said notes unpaid had become due, and that he would cause the trustee to advertise and sell the property at once, and sell the same for cash as authorized, and at which sale he would purchase the property unless the same should bring a sum in excess of the price asked plaintiff; and that he then proposed to plaintiff that he would enter into a written contract with him to sell him the property for the price agreed upon between him and Charoukas, and that if he should be unable to purchase the property at the trustee's sale for the said sum, he would refund to him the purchase price paid, with interest, and would in the meantime allow plaintiff the use of the hotel property free of rent.

And with respect to the $500.00 payment on the price, or as a forfeiture, McNutt says plaintiff, claiming that he was not then prepared to pay the whole of the purchase money, agreed with him to deposit the same in the bank as the initial payment, and that he would return within a week and pay the balance, and should enter into a contract with him, and should then take possession of the property, but if he failed or refused so to do, "then the deposit of $500.00 was to belong to McNutt, and that the receipt referred to in plaintiff's bill was then given." He denies that plaintiff did not know at the time that he was purchasing the property from respondent, and denies the allegation of the bill respecting the inclusion of the groceries in the plaintiff's purchase, and denies that it was because he was denied the right to the groceries by Charoukas he elected not to take any of the

property, but says that this was a mere subterfuge or excuse for not taking the property.

He further denies that plaintiff did not know the contents of the receipt given him for the initial payment for the property, and affirms as a matter of law that said payment, under the circumstances of the case, should not be considered as a forfeiture only, but in the nature of liquidated damages for the failure of plaintiff to carry out the contract.

In conclusion respondent says that after plaintiff refused to carry out his contract, he did purchase the property at the trustee's sale, and afterwards resold the same to the said Charoukas, who is now the owner thereof, subject to respondent's lien for the purchase money, and has agreed with him that he is to have the benefit of the $500.00 paid by plaintiff, unless he should be required to repay the same to plaintiff, who had threatened suit therefor.

These pleadings present the following questions of law and fact: First, was the contract in fact made with Charoukas and not with McNutt, and the plaintiff deceived and entrapped into accepting the receipt for the $500.00, evidencing a contract with McNutt? Second, did the contract, whether with the one or the other of the parties mentioned, cover the groceries, as alleged in the bill? Third, did the payment, under the facts and circumstances disclosed by the record, in legal effect amount to a payment on the property, or a forfeiture of the amount if the plaintiff should fail within the time stipulated to appear and pay the balance and take over the property, relievable against as such in a court of equity?

On the first question, we think it clear that the contract was in fact made with Charoukas, and that McNutt was a mere go-between and intervenor as alleged, to secure payment of his debt. That the negotiations were begun and substantially agreed upon between plaintiff and Charoukas, the plaintiff alleges and McNutt admits, not only in his answer, but in his sworn testimony. Charoukas was more deeply interested in the transaction than McNutt, for he was endorser on the notes secured by the deed of trust on the property, and McNutt swears that he had an additional deed of trust on other property of Charoukas, and was absolutely safe; and

he admits that Charoukas was interested in this way in making the sale. Charoukas was just as competent and able to make the sale and pass title as McNutt, except that the latter owned the notes secured by the deed of trust. Plaintiff was invited by Charoukas to go to McNutt's office, not to negotiate for the property but to see his lawyer and enter into the writing which he might have prepared embracing the contract. And McNutt in his answer says that when plaintiff and Charoukas came to his office the latter informed him, as already stated, that he and plaintiff had about concluded a deal between them for the sale of the property by Charoukas to plaintiff. Then it was, so he answers, that he explained why Charoukas could not, but that he could, make the sale and pass title to the property, and would do so on terms. In his testimony he varies this statement of the fact. There he swears in substance that Charoukas represented that plaintiff wanted to buy the property and that he had shown him the same, and that he explained to plaintiff his relationship to the property and proposed to enter into the contract substantially as alleged in his answer. Plaintiff swears that he did not understand that he was contracting with McNutt; that he could not read or write the English language, and that the receipt, if read to him, he did not understand evidenced any contract other than the one he had made with Charoukas. This receipt, which was signed by neither plaintiff nor McNutt, and produced in evidence, was signed only by Vermillion, assistant cashier of the bank of which McNutt was president. It acknowledges receipt of the $500.00, which recipient "is to hold on deposit until the 31st day of August, 1922; and at that time am to pay the same over to C. R. McNutt as a payment upon the furniture and fixtures now in the Belmont Hotel upon the first floor thereof, which property *I am to pay the sum of Two Thousand Dollars* ($2,000.00) *for* and the Five Hundred Dollars above deposited is to be used as a part of the Two Thousand Dollars. In the event I do not pay the remainder of the Two Thousand Dollars on the 31st day of August, 1922, then the said C. R. McNutt is to have the Five Hundred dollars above mentioned *as a forfeit* for my failure to comply with the contract." As stated, this paper was not signed by plaintiff.

Grammatically construed, it would appear to be the contract of the assistant cashier, or his bank, to pay the balance of the purchase money and complete the contract. But assuming that plaintiff is the contracting party, the receipt contains not a word of reference to any additional contract or to any conditions thereof, except the purchase of the property and payment of the purchase money. And plaintiff denies any such conditional sale as alleged by McNutt, or that he had any contract in fact with McNutt in relation thereto.

With respect to the groceries alleged to have been included in the purchase, plaintiff and the witness Charles Saunders said that the latter, who was present, made an inventory of the groceries on paper with a pencil furnished by Charoukas, and the writing was identified and introduced in evidence; and they swear that these groceries were pointed out to them by Charoukas, not as property levied on by a constable, but as property included in the purchase. A significant fact in connection with this deposit is, that while it states on its face that the same was to be held until August 31st, Vermillion swears that McNutt got credit for the $500.00 the very day the certificates of deposit were deposited by plaintiff. Another significant fact, already alluded to, is that McNutt swears that while he afterwards purchased the goods and then sold them to Charoukas, he gave the latter the benefit of the $500.00 payment, conditioned, however, on his success in defeating recovery thereof by plaintiff. On these facts and others appearing in evidence, we are fully persuaded that the contract was made with Charoukas and that plaintiff did not understand he was contracting with McNutt. If, therefore, McNutt got the plaintiff's money without any right or interest therein, he should be required to account for it.

On the second point at issue, namely, whether the contract included the groceries which Charoukas, or McNutt for him, declined to turn over, the witnesses present disagree. First, we observe that the deed of trust from Ward to Charoukas covered the groceries as well as the other property. If it attached to the particular groceries then in the restaurant, it constituted a lien thereon superior to any judgment or attachment in favor of Ward's creditors. The

constable, Crotty, and a witness for defendants, could not remember who the attachment or execution creditors were, nor the amount of the claims represented. It is not shown whether the groceries inventoried by plaintiff were in the restaurant when the deed of trust was executed or not. Charoukas swears that the inventory taken by plaintiff was made, not on the day of the sale, but on August 31st, when plaintiff returned to conclude the contract. Both plaintiff and Saunders swear that it was made on the day of the contract. We are of opinion that the direct and circumstantial evidence preponderates in favor of plaintiff's contention that the groceries were included, and certainly that he was led to believe they were so included. But whether so or not, that he is entitled to a decree for his money upon the whole case as presented.

As to the third point of inquiry, respecting payment or forfeiture, we have concluded that neither McNutt nor Charoukas then had title to the property, and were not able on August 31st to convey or pass title to plaintiff, and unless he so agreed, plaintiff was not bound to take any of the property and pay the whole of the purchase money on any additional or different terms and conditions. McNutt then proposed to enter into a written contract, and as a condition of closing up the deal, providing that if he was not able to purchase the property at the trustee's sale at the price agreed upon, then plaintiff would not get any of the property, but McNutt would be bound only to refund to him his money with interest at four per cent until paid. No one but McNutt says that any such condition was attached. All that his other witnesses contend for respecting the contract alleged to have been made with him, is that McNutt represented that the title was outstanding in the trustee, and that he would get it in at the trustee's sale and then transfer it to plaintiff. The added conditions seem to have been in the mind of McNutt alone. He may have had it in mind to impose that condition, but we do not think it can be inferred from any of the other testimony that such a condition was suggested in the negotiations with McNutt. The receipt prepared by McNutt and signed by the assistant cashier of his

bank contains no such condition. Nor is there anything in it suggestive of any but good title at the date the contract was to be closed up. The bill may be short on this ground of relief, but we think as the record shows foundation therefor, and if necessary to complete the relief, the bill might be so amended. The receipt refers to the payment as a ''forfeit,'' and in legal effect it amounts to that, and a forfeit to one who has no title to the property, and as the record now shows finally given over to Charoukas, with whom McNutt says the contract was not made. The contract as claimed by McNutt seems to us to be so unjust and inequitable that a court of equity ought to disregard it, or relieve against it. No injustice will be done to McNutt thereby, for he was fully secured against loss, and Charoukas is not shown to have been damnified. He got back the property which he undertook to sell to plaintiff; and there is no evidence showing the slightest damage. So far as the record shows, he may have been in fact benefited by plaintiff's refusal to take the property. Plaintiff has received nothing for his money.

The main proposition relied on by defendant's counsel is that a purchaser can not, as a general rule, upon his default to complete the contract, recover back payments made on the property, even though it be provided in the contract that such payments are to be treated as a forfeiture or as liquidated damages for the breach of the contract. Conceding that this general proposition is fully supported by the authorities cited and relied on, they as fully support a corollary, the proposition that if the seller has not the title to the property and is unable on the day appointed to close the contract and give the purchaser what he impliedly bargained for, the purchaser may decline to complete the contract and recover all moneys paid or advanced thereon. To entitle the seller to take the full benefits of a contract, he must be ready and willing to fully comply with the contract on his part. *Hansbrough* v. *Peck,* 5 Wall. 497; *Neis* v. *O'Brien* (Wash.), 50 Am. St. Rep. 894. There is implied warranty of good title in every contract of sale of personal property, which the purchaser may rely upon. 2 Mechem on Sales, §§1300-1302. In the present case, neither the title nor the possession of the

property had passed to plaintiff. Plaintiff failed to get what he contracted for. He was therefore not bound to accept the property and pay the purchase money.

Our conclusion is that plaintiff is entitled to the relief prayed for. We therefore reverse the decree and will here enter such decree as the circuit court should have entered.

*Reversed and rendered.*